**The IRISH LESBIAN AND GAY ORGANIZATION, Plaintiff,**

v.

**Rudolph W. GIULIANI, in His Official Capacity as Mayor of the City of New York, William J. Bratton, in His Official Capacity as Police Commissioner of the City of New York, and the City of New York, Defendants,**

**New York County Board of the Ancient Order of Hibernians, Defendant–Intervenor.**

96 Civ. 1398 (JGK).

United States District Court, S.D. New York.

Dec. 18, 1996.

Jacqueline C. Charlesworth, Jamie E. Shapiro, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for plaintiff.

Paul A. Crotty, Corporation Counsel of the City of New York, Virginia Waters, Andrew M. Wasserman, Assistant Corporation Counsel, New York City, for defendants.

### OPINION AND ORDER

KOELTL, District Judge:

Plaintiff Irish Lesbian and Gay Organization ("ILGO") brings this action against New York City, its Mayor, and its Police Commissioner (collectively, "the City") challenging the denial of ILGO's application for a permit to conduct a parade on March 16, 1996 prior to the annual St. Patrick's Day Parade (the "Parade") conducted by the New York County Board of the Ancient Order of Hibernians (the "AOH"). Specifically, ILGO's permit application sought approval for a group of 1,500 to 2,000 people to march north along Fifth Avenue from 42nd Street to 86th Street—the same route as AOH's parade—starting at 9:30 a.m. Judge John F. Keenan of this Court denied a similar challenge to the City's refusal to grant a substantially similar permit to ILGO last year. *See Irish Lesbian & Gay Org. v. Bratton*, 882 F.Supp. 315 (S.D.N.Y.) ("*ILGO 1995*"), *aff'd*, 52 F.3d 311 (2d Cir.1995) (table). On March 14, 1996, this Court denied ILGO's motion for a preliminary injunction to prevent the City from denying ILGO's permit application. *See Irish Lesbian & Gay Org. v. Giuliani*, 918 F.Supp. 732 (S.D.N.Y.1996) ("*ILGO 1996*").

The City now moves for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). The City's motion is granted.

### I.

On a motion to dismiss, the factual allegations of the complaint are to be accepted as true and all reasonable inferences are construed in the plaintiff's favor. *See Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995); *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied*, —— U.S.

——, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994). A court should dismiss a complaint under Fed.R.Civ.P. 12(b)(6) only "if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

When reviewing a Rule 12(c) motion for judgment on the pleadings, this Court "must view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party." *Davidson v. Flynn,* 32 F.3d 27, 29 (2d Cir.1994); *Madonna v. United States,* 878 F.2d 62, 65 (2d Cir.1989); *see also National Ass'n of Pharmaceutical Mfrs., Inc. v. Ayerst Labs.,* 850 F.2d 904, 909 n. 2 (2d Cir.1988) (indicating that the Court treats a motion for judgment on the pleadings as if it were a motion to dismiss).

## II.

There is no material dispute with respect to the following facts, which were set forth in the Court's opinion in *ILGO 1996,* 918 F.Supp. at 736–39, familiarity with which is assumed. ILGO describes itself as a group of lesbians and gay men of Irish descent who formed a group in 1990 to create "a safe and comfortable forum for Irish lesbians and gay men to discuss and address [their] social, cultural and political needs." Since its inception ILGO has made repeated efforts to participate in the St. Patrick's Day Parade, an annual event held in New York City for over two hundred years. None of ILGO's legal challenges have met with success. *See ILGO 1996,* 918 F.Supp. 732; *ILGO 1995,* 882 F.Supp. 315; *New York County Bd. of Ancient Order of Hibernians v. Dinkins,* 814 F.Supp. 358 (S.D.N.Y.1993) (Duffy, J.) ("*ILGO 1993*"); *Irish Lesbian & Gay Org. v. New York State Bd. of Ancient Order of Hibernians,* 788 F.Supp. 172 (S.D.N.Y.1992) (Leval, J.) ("*ILGO 1992*").

In the 1992 and 1993 challenges, ILGO sought injunctive relief that would require the City to permit the group to march as a unit in the St. Patrick's Day Parade itself. Judges Leval and Duffy, respectively, denied ILGO's applications. The reasoning of the two decisions anticipated that of the Supreme Court in *Hurley v. Irish–American Gay, Lesbian & Bisexual Group of Boston,* —— U.S. ——, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995).

In 1995, ILGO brought an Article 78 petition in New York State Supreme Court to compel the New York Police Department ("NYPD") to issue ILGO a permit to conduct its own parade at 8:30 a.m. on the same day, Friday, March 17, 1995, and along the same route as the 1995 St. Patrick's Day Parade. The petition was removed to federal court, and Judge Keenan denied the injunction and dismissed the complaint. *See ILGO 1995,* 882 F.Supp. at 321.

This year, the St. Patrick's Day Parade was scheduled for Saturday, March 16, 1996, at 11:00 a.m. along its traditional route. On February 23, 1996, the AOH, the sponsor of the Parade, received a permit to conduct the Parade. On or about October 11, 1995, ILGO submitted to the City its application for a parade permit for a group of 1,500 to 2,000 people to march on the same day, along the same route, on the same street, and for the same distance as the St. Patrick's Day Parade. The only difference was that ILGO's parade would begin at 9:30 a.m., and the St. Patrick's Day Parade was scheduled to begin at 11:00 a.m. Nevertheless, the necessary preparations for the St. Patrick's Day Parade would have overlapped with the parade ILGO wanted to conduct in both time and location. The City denied ILGO's permit request on February 13, 1996, pursuant to authority granted to the Police Commissioner under the New York City Administrative Code § 10–110 and the Police Department's Administrative Guide Procedure 321–14 interpreting that provision. *See ILGO 1996,* 918 F.Supp. at 741–42. The City explains that the permit was denied because two parades cannot be conducted at the same location on the same day at the same time. The City maintained that allowing two simultaneous parades would have allowed unacceptable levels of traffic congestion and imposed unmanageable burdens on police, sanitation, and emergency medical services.

On or about February 26, 1996, ILGO brought this action seeking declaratory relief, a preliminary and permanent injunction, and compensatory damages. ILGO challenges both the facial constitutionality of the City's parade permitting scheme and the constitutionality of the scheme as applied to ILGO in the City's refusal to grant it a parade permit to have a protest march on March 16, 1996. This Court denied the motion for a preliminary injunction, finding that the City's denial of ILGO's parade permit application was a constitutional time, place, and manner restriction on ILGO's First Amendment rights, *see ILGO 1996*, 918 F.Supp. at 740–45, that ILGO had not shown a clear or substantial likelihood of success on its facial challenge of the City's parade permitting scheme, *see id.*, at 745–47, and that the equities tipped decidedly against ILGO, *see id.*, at 748–49.

### III.

ILGO challenges the facial constitutionality of Section 10–110 of the New York City Administrative Code, the permitting ordinance under which the Police Commissioner derives the authority to regulate parades. ILGO argues that the ordinance delegates unfettered discretion to city officials and is unconstitutionally overbroad. The City contends that ILGO's facial challenge to the City's permitting scheme should be dismissed because it was either raised or could have been raised in *ILGO 1995* and therefore is barred by the doctrines of collateral estoppel and res judicata.

Collateral estoppel and res judicata are designed to protect "litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979).

Collateral estoppel bars a party from bringing a second action to relitigate an issue of fact or law that was actually decided in the first action so long as that party had "a full and fair opportunity to litigate the issue in the prior proceeding and the decision of the

issue was necessary to support a valid and final judgment on the merits." *Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir. 1992), *cert. denied*, 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993); *Balderman v. United States Veterans Admin.*, 870 F.2d 57, 62 (2d Cir.1989) (citing *Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 867–68, 99 L.Ed. 1122 (1955)).

Res judicata bars subsequent litigation of "any ground of recovery that was available in the prior action, whether or not it was actually litigated or determined." *Balderman*, 870 F.2d 57, 62 (2d Cir.1989); *see also Nevada v. United States*, 463 U.S. 110, 129–30, 103 S.Ct. 2906, 2918, 77 L.Ed.2d 509 (1983) ("Simply put, the doctrine of res judicata provides that when a final judgment has been entered on the merits of a case, '[i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1876). The final 'judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever.' *Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948)."); *Parklane Hosiery*, 439 U.S. at 326 n. 5, 99 S.Ct. at 649 n. 5 (describing the standard for both res judicata and collateral estoppel).

ILGO argues that neither collateral estoppel nor res judicata applies to its facial challenge to the City's parade permitting scheme because *ILGO 1995* was not a final adjudication on the merits of any of ILGO's claims. ILGO asserts that although Judge Keenan dismissed its application for a preliminary injunction, he expressly reserved consideration of the merits of its claims for another day. ILGO also contends that, at most, the judgment in *ILGO 1995* dismissed its claims without prejudice. ILGO asserts that the City therefore cannot argue that ILGO is barred from litigating anything except the decision to deny the 1995 permit.

However, contrary to ILGO's assertions, a final judgment was entered in *ILGO 1995* in which ILGO's claims relating to the 1995 parade were dismissed. In his decision in *ILGO 1995*, Judge Keenan set forth the permitting ordinance in full and held that the City's denial of ILGO's 1995 permit application pursuant to § 10–110 was a constitutional restriction of ILGO's First Amendment rights. Judge Keenan denied ILGO's motion for a preliminary injunction and closed the case. *See ILGO 1995*, 882 F.Supp. at 321. The Court of Appeals for the Second Circuit affirmed the judgment below "for substantially the reasons stated by the district court." (March 16, 1995 Order, attached as Ex. V to Waters Aff.) *See ILGO 1995*, 52 F.3d 311 (2d Cir.1995) (table). A judgment was entered dismissing ILGO's complaint. (March 16, 1995 J. at 1–2, attached as Ex. W to Waters Aff.) When ILGO later moved for a clarification of the judgment to determine whether Judge Keenan had dismissed its application for permanent injunctive relief as to all future parades as well as its application for a preliminary injunction with respect to the 1995 parade, it submitted a motion to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(e). At that time, ILGO did not dispute that a judgment was entered nor appeal it. In an opinion dated September 29, 1995, Judge Keenan denied the application for amendment of the judgment and stated that the question of future permit applications was not yet ripe.[1] *See Irish Lesbian & Gay Org. v. Bratton*, 95 CIV. 1440, 1995 WL 575330, at *1 (S.D.N.Y. Sept. 29, 1995). Therefore, there was a final judgment that dismissed ILGO's challenge to the denial of its 1995 permit.

ILGO's facial challenge is barred by collateral estoppel because the issue of the invalidity of Section 10–110 was raised in *ILGO 1995*. First, ILGO's allegations that the statute does not require the City to respond to a permit application within a reasonable time, in writing, and with an explanation of the denial were raised during the 1995 proceedings in ILGO's petition, (Waters Aff.Ex.

E ¶¶ 9–10), in ILGO's Memorandum of Law, (Waters Aff.Ex. F at 2), in ILGO's brief to the Court of Appeals, (Waters Aff.Ex. T at 4–5), and in the Center for Constitutional Rights' amicus brief, (Waters Aff.Ex. G at 2.)

Second, ILGO's contention that the permitting scheme is unconstitutional because it gives the New York City Police Department "unbridled discretion" in deciding whether to allow or disallow marches was raised during the 1995 proceedings. In papers submitted to Judge Keenan in support of its motion for a preliminary injunction, ILGO plainly challenged the facial validity of § 10–110 and, in particular, the discretion given to the City under the permitting scheme:

> The Defendants have shown that they have the unbridled discretion to allow or disallow a march to take place in spite of the regulations set forth in this section of the Administrative Code. This type of unbridled discretion is a prior restraint, and may result in censorship, *Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 757, [108 S.Ct. 2138, 2144, 100 L.Ed.2d 771] (1988). One cannot presume that such unbridled discretion will be exercised in a legal manner.... The record reflects that the NYPD has ignored this section in the past....

(Waters Aff.Ex. Q at 14.) Moreover, the City also addressed to ILGO's "unbridled discretion" argument in its motion papers. (Waters Aff.Ex. M at 20–21.)

Third, ILGO's claim that Section 10–110 gives a content based preference to certain expressive activity by wholly exempting such activity from the licensing requirements was also fully addressed during the 1995 proceedings. In its motion papers, ILGO argued that "[t]he attempt to invoke Administrative Code § 10–101(a)(2) is unquestionably a prior restraint on free speech.... The practical effect of such a statute would be to give the police the power to 'award' a permit to a single group, in perpetuity." (Waters Aff. Ex. Q at 13.) ILGO further asserted that "that section of the Administrative Code

---

1. There is no evidence that Judge Keenan expressly reserved consideration of the merits of ILGO's claims for another day or that he dismissed ILGO's claims without prejudice. The judgment does not so state nor does Judge Keenan's September 29, 1995 opinion imply that the prior judgment was so limited.

which grants the Defendants the power to deny the exercise of First Amendment rights must be found to be unconstitutional as a matter of law both in general and in its application to the matter at bar." (Waters Aff.Ex. Q at 14.)

ILGO argues that its facial challenge to Section 10–110 based on the overbreadth of the City's entire permitting scheme was not raised in *ILGO 1995.* However, ILGO did argue that, contrary to the Supreme Court's decision in *Lakewood,* the City had unbridled discretion to deny parade permits. (Waters Aff.Ex. Q at 14.) The City argued in its motion papers that

> ... § 10–110 does not, as ILGO suggests, either mandate the approval of ILGO's permit application or give the Police Department unfettered discretion in acting on parade permit applications. The statutory prohibition on the issuance of permits in particular circumstances are clear and do not give the Police Department the level of discretion that could constitute a prior restraint or result in censorship. *Cf. City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750 [108 S.Ct. 2138, 100 L.Ed.2d 771] (1988). As required by *Lakewood* and subsequent decisions, the Police Department's actions under § 10–110 are governed by guidelines that are "clearly set forth, (ii) not so vague as to be subject to abuse, (iii) consistently applied and (iv) not based on viewpoint."

(Waters Aff.Ex. M at 20–21.)

Moreover, the evidence belies ILGO's assertion that Judge Keenan did not consider the constitutionality of the City's permitting scheme in *ILGO 1995.* As noted by this Court in *ILGO 1996,* implicit in Judge Keenan's finding that the denial of the parade permit in 1995 was a reasonable time, place, and manner restriction was a determination that the City's permitting scheme was constitutional. *See ILGO 1996,* 918 F.Supp. at 747 ("In light of ILGO's presentation of the challenge to the ordinance, and the necessity that the permitting ordinance be valid in order for a valid time, place, and manner restriction to be imposed under its authority, the City's argument that Judge Keenan necessarily decided the issue is a strong one.") Judge

Keenan also specifically stated that "[s]ection 10–110 of the Administrative Code is obviously, from a reading thereof, itself content neutral." *ILGO 1995,* 882 F.Supp. at 319.

■ To the extent that any aspects of ILGO's facial challenge to the City's permitting scheme were not raised in *ILGO 1995,* res judicata bars such claims because they could have been raised. The facial challenge to the permitting scheme was no different in 1996 than it was in 1995. The issue of whether § 10–110, the Admin.Guide P. 321–14, and the NYPD's past practices comport with the requirements of the First Amendment remains the same as it would have been during the 1995 lawsuit. Moreover, it is well-established that a plaintiff need not be rejected for a permit or even apply for one to challenge a permitting scheme as overbroad. *See City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 755–56, 108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988) ("[O]ur cases have long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license."); *Freedman v. Maryland,* 380 U.S. 51, 56, 85 S.Ct. 734, 737, 13 L.Ed.2d 649 (1965) ("[I]t is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license."). Consequently, there was no need for ILGO to apply for a 1996 parade permit to challenge Administrative Code § 10–110 as unconstitutional on the basis of unfettered discretion or to challenge the City's entire permitting scheme as a whole as unconstitutionally overbroad. Those claims should have been litigated fully in the action before Judge Keenan, and res judicata would bar ILGO from asserting them now. *See Balderman,* 870 F.2d at 62 ("Res judicata ... prevents the subsequent litigation of any ground of recovery that was available in the prior action, whether or not it was actually litigated or determined.")

## IV.

■ ILGO also argues that, in the event that the Court finds that the technical requirements of collateral estoppel and res judicata have been met, the Court should refrain from applying them for public policy reasons. *See, e.g., Quinones Candelario v. Postmaster Gen. of the United States,* 906 F.2d 798, 802 (1st Cir.1990), *cert. denied,* 499 U.S. 919, 111 S.Ct. 1307, 113 L.Ed.2d 242 (1991); *International Harvester Co. v. Occupational Safety & Health Review Comm'n,* 628 F.2d 982, 986 (7th Cir.1980); *Moch v. East Baton Rouge Parish School Bd.,* 548 F.2d 594, 598–99 (5th Cir.), *cert. denied,* 434 U.S. 859, 98 S.Ct. 183, 54 L.Ed.2d 132 (1977); *La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.,* 495 F.2d 1265, 1276 (2d Cir.1974). However, given the history and disposition of the four separate applications by ILGO, including findings of past inequitable conduct, *see ILGO 1996,* 918 F.Supp. 732; *ILGO 1995,* 882 F.Supp. 315; *ILGO 1993,* 814 F.Supp. 358; *ILGO 1992,* 788 F.Supp. 172, this is not the case in which to make exceptions to the rules that normally would apply. *See, e.g., Phoenix Canada Oil Co., Ltd. v. Texaco,* 749 F.Supp. 525, 537 & n. 20 (S.D.N.Y.1990). Fairness and efficient judicial administration are served by applying and not by ignoring the principles of collateral estoppel and res judicata in this case.

## V.

■ ILGO also challenges the constitutionality of Section 10–110 as applied to ILGO in the City's refusal to grant it a parade permit to have a protest parade on March 16, 1996. ILGO argues that the denial of the permit is unreasonable and that the reasons the City has given as justification for the denial are pretextual and serve only to cover up discrimination based on prejudice against ILGO's members. The City contends that ILGO's as applied challenge seeking a parade permit for March 16, 1996, must be dismissed as moot.

■ An actual case or controversy must exist at all stages of federal court proceedings to support subject matter jurisdiction. *See* U.S. Const. Art. III; *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975); *DeFunis v. Odegaard,* 416 U.S. 312, 316, 94 S.Ct. 1704, 1705–06, 40 L.Ed.2d 164 (1974); *Fox v. Bd. of Trustees of the State University of New York,* 42 F.3d 135, 139–40 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2634, 132 L.Ed.2d 873 (1995). The mootness doctrine is derived from the constitutional requirement that federal courts may only review live cases or controversies. *See Phillips v. Ienuso,* No. 93 Civ. 6027, 1995 WL 239062, at *1 (S.D.N.Y. Apr. 24, 1995); *DeFunis,* 416 U.S. at 316, 94 S.Ct. at 1705–06. "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin–Trigona v. Shiff,* 702 F.2d 380, 386 (2d Cir.1983). "[T]he mootness doctrine ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit, including the pendency of the appeal. Accordingly, a case that is 'live' at the outset may become moot 'when it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury.'" *Cook v. Colgate Univ.,* 992 F.2d 17, 19 (2d Cir.1993) (internal citations omitted) (quoting *Alexander v. Yale,* 631 F.2d 178, 183 (2d Cir.1980)).

In this case, ILGO's request for declaratory and injunctive relief with respect to its as applied challenge to the City's denial of its 1996 permit application is moot. The date on which ILGO sought to have its protest march—March 16, 1996—has come and gone. This Court denied the motion for a preliminary injunction to require issuance of the permit, and ILGO chose not to appeal. The declaratory and injunctive relief sought in the Complaint could provide no legally cognizable benefits to ILGO now that March 16, 1996 has passed. *See Prins v. Coughlin,* 76 F.3d 504, 506 (2d Cir.1996) (finding that a prisoner's action for injunctive relief against a prison facility was moot after the prisoner was transferred); *Fox,* 42 F.3d at 140 (finding that the declaratory and injunctive relief sought against a SUNY regulation that operated to bar private commercial businesses from engaging in sales demonstrations in students' dormitory rooms was moot because all of the plaintiffs were no longer SUNY

students and thus could not benefit from the relief); *Cook,* 992 F.2d at 19–20 (dismissing an action seeking to elevate Colgate's women's club ice hockey team to varsity status and to provide equal funding and benefits to its men's and women's ice hockey programs as moot where the ice hockey season had ended and all the plaintiffs had graduated). There is therefore no longer a case or controversy with respect to the 1996 permit application for this Court to decide.

■ Moreover, a permanent injunction is also not appropriate because the circumstances vary every year with respect to time, place, and manner. In reviewing ILGO's application for a preliminary injunction with respect to this year's parade, this Court noted the factual differences in circumstances between ILGO's 1995 and 1996 applications for a parade permit:

> A significant difference between the two parades is that this year's St. Patrick's Day Parade will be held on a Saturday rather than a weekday. As both parties argue, weekdays and weekends pose different traffic and safety concerns: the City argues the difficulties are likely to be more severe on weekends, while ILGO contends they will ease. In addition, the timing of ILGO's proposed parade is different: this year ILGO wants to begin its parade at 9:30 a.m., much closer to the starting time

of the St. Patrick's Day Parade, instead of 8:30 a.m. as it had requested last year. In sum, this year's litigation presents factual circumstances that are significantly different from those of last year.

*ILGO 1996,* 918 F.Supp. at 741. In 1995, Judge Keenan also denied a similar application: "Claims based on possible future permit applications are not ripe, because they concern future events that may not occur.... [T]his Court may not rule on the legality of indefinite future events." *Irish Lesbian & Gay Org. v. Bratton,* 95 CIV. 1440, 1995 WL 575330, at *1 (S.D.N.Y. Sept. 29, 1995). Moreover, there would be no effective way to craft such an injunction in view of the rights of the AOH to conduct its Parade without interference pursuant to *Hurley,* —— U.S. at ——, 115 S.Ct. at 2350 ("While the law is free to promote all sorts of conduct in place of harmful behavior, it is not free to interfere with speech for no better reason than promoting an approved message or discouraging a disfavored one, however enlightened either purpose may strike the government.")[2]

■ ILGO argues that its remaining claim for compensatory damages of not less than two hundred thousand dollars ($200,-000.00) is not mooted by the fact that the parade date has passed.[3] It alleges that

---

**2.** ILGO asserted for the first time at oral argument that it should be entitled to an exception to the mootness doctrine because the enforcement of the parade permitting scheme was "capable of repetition, yet evading review." *See, e.g., Carroll v. President & Comm'rs of Princess Anne,* 393 U.S. 175, 179, 89 S.Ct. 347, 350, 21 L.Ed.2d 325 (1968). Since this exception was not raised in the papers, it should properly be rejected. In any event, it is without any merit. In four of the last five years, ILGO has bought a challenge to the St. Patrick's Day Parade. Despite bringing the challenge at the last moment, ILGO has obtained review of its complaints. There is nothing that prevents ILGO from applying for a permit in a timely fashion and challenging a denial in a timely fashion on any grounds that may be open to it.

**3.** In some circumstances, the existence of nominal damages has been sufficient to save a complaint from dismissal on grounds of mootness. *See Beyah v. Coughlin,* 789 F.2d 986, 989 (2d Cir.1986); *Davis v. Village Park II Realty Co.,* 578 F.2d 461, 463 (2d Cir.1978). However, there is no specific claim for nominal damages in ILGO's

Complaint. *See Fox,* 42 F.3d at 141–42 (dismissing the plaintiffs' action as moot where their complaint contained no mention of nominal damages and no basis existed "to allow a belated claim for damages 'to breathe life into a moribund dispute' ") (quoting *McCabe v. Nassau County Medical Ctr.,* 453 F.2d 698, 702 (2d Cir. 1971)); *R.S. & V. Co. v. Atlas Van Lines, Inc.,* 917 F.2d 348, 351 (7th Cir.1990) (holding that the plaintiff's breach of contract action was moot because the plaintiff did not seek nominal damages); *Goichman v. City of Aspen,* 590 F.Supp. 1170, 1173 (D.Col.1984) (deeming plaintiff's individual claims moot when he was entitled only to nominal damages and "no prayer appears in the Complaint for such nominal damages"), *aff'd on other grounds and remanded,* 859 F.2d 1466 (10th Cir.1988). In addition, ILGO argues affirmatively in its brief that it does not claim nominal damages, but that its damages are substantial and predicated upon real and compensable injuries. (Pl.'s Mem.Law Opp'n Mot.J.Pleadings at 34.)

The exclusion of ILGO from the Parade because its members are lesbian and gay and ILGO's inability lawfully to protest that exclusion have injured ILGO and its members in many ways. Members of ILGO have been subjected to family rejection and public ridicule, have been told they are not Irish, have been arrested and have lost their jobs. Perhaps most significantly, the exclusion of and related hostility toward ILGO have divided and isolated ILGO from the rest of the Irish community.

(Compl. ¶ 48.) However, the only plaintiff in this case is ILGO. There are no individual plaintiffs. An organization has standing to bring suit on behalf of its members only if it meets a three part test: "[1] its members would otherwise have standing to sue in their own right; [2] the interests it seeks to protect are germane to the organization's purpose; and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 344, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). ILGO's damage claim does not meet the third prong of the *Hunt* test. The allegations that its members are entitled to compensation because they have suffered humiliation, been told they were not Irish, been arrested, and lost their jobs all would require the participation of individual members in the action.

█ Moreover, associational standing is usually only recognized where the association seeks a declaration or injunction. *See United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, — U.S. —, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996); *Warth v. Seldin*, 422 U.S. 490, 515, 95 S.Ct. 2197, 2213–14, 45 L.Ed.2d 343 (1975). As explained by the Supreme Court:

> The present case, however, differs significantly as here an association seeks relief in damages for alleged injuries to its members. [The petitioner] alleges no monetary injury to itself, nor any assignment of the damages claims of its members. No award therefore can be made to the association as such. Moreover, in the circumstances of this case, the damages claims are not common to the entire membership, nor shared by all in equal degree. To the contrary, whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof. Thus to obtain relief in damages, each member of [the petitioner] who claims injury as a result of respondents' practices must be a party to the suit, and [the petitioner] has no standing to claim damages on his behalf.

*Warth*, 422 U.S. at 515–16, 95 S.Ct. at 2214. ILGO therefore cannot maintain an action on behalf of its members for compensatory damages.

Furthermore, ILGO does not have standing to assert its claim for monetary damages because its claim fails the traceability and redressability requirements. As stated by the Supreme Court, "[t]he requirement of standing ... has a core component derived directly from the Constitution. A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). In this case, the injuries that are alleged do not arise from the fact that ILGO was not provided with a permit, but from the fact that the AOH will not let ILGO march in its parade, which the AOH has the constitutional right to refuse to do. *See Hurley*, — U.S. at ———, 115 S.Ct. at 2350–51.

## CONCLUSION

Accordingly, for the reasons explained above, the City's motion to dismiss is **granted.** The Clerk is directed to enter Judgment dismissing the action and closing the case.

**SO ORDERED.**